UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO: 8:22-CR-00332-VMC-TGW

UNITED STATES OF AMERICA

Plaintiff,

Vs.

SHANE PAUL CAMUS

Defendant.

______________________________/

**SENTENCING MEMORANDUM AND REQUEST FOR ALTERNATIVE SENTENCE PURSUANT TO 18 U.S.C. SECTION 3553(a)**

COMES NOW the Defendant, SHANE PAUL CAMUS by and through his undersigned attorney, and respectfully files the following Memorandum and Request for Alternative Sentence pursuant to 18 U.S.C. Section 3553 (a), and hereby states the following:

Based upon the factors set forth in 18 U.S.C. Section 3553(a), and those grounds set forth in this memorandum, SHANE PAUL CAMUS, respectfully requests this Court to impose a non-guideline sentence and grant a downward variance from the present estimated guideline imprisonment range of 97 to 120 months. The Defendant would contend that the guideline range is excessive and substantially over represents a fair, reasonable and necessary punishment for the offense that he has committed. For the reasons stated below, Camus submits that a variance from the advisory guideline sentencing range should be granted and an alternative sentence below the guidelines should be imposed for him.

On October 27,2022, SHANE PAUL CAMUS pled guilty to a one-count information charging him with Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1347 and 1349. The Presentence Investigation Report prepared in this matter places the Advisory Guideline Offense Level at 30 with a Criminal History Category of I, exposing him to a Guideline Imprisonment Range of 97 to 120 months. The statutory maximum for the offense is 10 years in prison (120 months). The Defendant would contend that even a sentence at the bottom of the guidelines would be unreasonable.

## **SENTENCING AFTER *BOOKER***

In accordance with the decision in United States v. Booker, 543 U.S. 220 (2005), Kimbrough v. United States, 552 U.S. 85(2007), Rita v. United States, 551 U.S. 338 (2007), Gall v. United States, 552 U.S. 38(2007), Nelson v. United States, 129 S.Ct.. 890 (2009) (per curium), Spears v. United States, 555 U.S. 261 (2009) and the provisions of 18 U.S.C. § 3553(a), this Court shall consider the following criteria in imposing a sentence that is sufficient, but not greater than necessary to achieve the mandates of sentencing. These factors include: (1) the nature and the circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) To protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Id. Additionally, the court needs to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. An analysis of these §3553 factors, when viewed together in this case clearly warrants a downward variance from the advisory sentencing guidelines.

## PERSONAL CHARACTERISTICS

Standing before this Court is a twenty-nine-year young man, born and raised in South Florida. He is from a warm and loving family who suffered periods of extreme financial hardship which started during his high school years. He recalls his childhood home being foreclosed on and forced to live with his parent's friends for quite a few months after the bank took back their house. There were times when there was no money available and all credit had been exhausted.

Shane graduated from Western High School in 2012 and was avid in dirt bike competition, computers and internet gaming development.

While waiting to attend college, Shane had various jobs in the restaurant business to save money for college. He was a server at various establishments in South Florida including the Rainforest Café, Lucille's Diner, and the Quarterdeck restaurant.

Always being a compassionate and caring person, he chose to pursue an occupation in nursing. He began attending a nursing program in 2014 and graduated with an Associate's Degree with a 3.27 average in 2016. Shortly thereafter, he became licensed as a registered nurse and commenced employment at Arch Plaza in Miami which was both a rehabilitation center and nursing home facility. He worked there for about one year and assisted the elderly and affirmed. Some of his compassionate efforts are outlined in the sentencing exhibits [DE102] which detail how he saved one of his patients. He changed his employment to Comprehensive Health Services who was a contractor with the federal government agency, Health and Human Services (HHS). Shane worked as a nurse at a refugee resettlement facility in Homestead, Florida. He treated the medical needs of immigrants who entered the United States without families as unaccompanied minors. He would do physical assessments, triage and treat the sick children. This job was

rewarding to him since he found great happiness in helping these children. Sadly, his position was eliminated when the government shut down the facility. The sentencing letters submitted to the court outline his outstanding achievements and accomplishments in the nursing field.

Unfortunately, at the age of twenty-three he left the nursing field to become involved in medical supply sales which led to this terrible disaster. Being young, he made poor choices and relied on advice from professionals, his father and individuals far older than him. His immaturity, actions, decisions and advice of others were all components which caused him to become involved in this fraud with Medicare. The conspiracy alleges the activity occurring between 2017 and 2020. In 2020, after becoming aware that a criminal investigation had commenced, he and his father retained counsel and fully cooperated with law enforcement surrounding the investigation. Not only being deeply remorseful, both Shane and his father proactively cooperated and provided significant assistant to the Government surrounding this investigation and others. It is expected that their cooperation will be outlined in great detail surrounding the filing and presentation of a 5k1 motion by the Government. Quite simply they have done everything they can to make amends for the poor choices they made that led to their criminal activity.

The prospects of prosecution and incarceration have had significant effects on Shane's physical and mental health. He has been dealing with anxiety and depression and has been seeking treatment which includes a medication regiment.

During the last five years he has been in a relationship with Emily Marie Lewis, who is twenty-seven years old. Their relationship culminated in marriage last August and they are both committed to overcoming to whatever lies ahead from Shane's actions. Mrs. Lewis has a bachelor's degree in Health Service Administration and a master's in Business Administration. Her father is a federal administrative judge, and her mother is an attorney. As outlined in the

sentencing letters, the Defendant's wife, mother-in-law and father-in-law remain very support of Shane.

The criminal activity for which he has pled guilty to is an aberration in his life. What consistently stands out from all those who know Shane, is that he is a kind-hearted, giving, respectful, compassionate and productive a young man.

Both Shane and his wife are committed to get through this and stay positive.

It is without question that the history and characteristics of the offender is "an important factor in sentencing." *See United States v. Howard,* 28 F. 4th 180 (11th Cir. 2022). In evaluating this "important" Factor, the court assess a "heavy" weight- so long as it is reasonable under the circumstances. *See United States v. Smith,* 813 Fed. Appx. 450 (11th Cir. 2020). In fact, "[the] existence of the 'history and characteristics of the defendant' [in the § 3553(a) analysis] is a cornerstone of the sentencing factors." *See United States v. Grober,* 595 F. Supp. 2d 382, 407 (D. N.J. 2008). As stated by the court in *Grober* consideration of this factor necessarily means "that a life well-lived counts." *Id.* Here, Mr. Camus personal attributes clearly weigh heavily in favor of a variance sentence.

Numerous letters have been submitted on behalf of Shane from outstanding members of the community which have a common theme of his positive qualities. All those around him were shocked as to how he could get involved in this in light of his outstanding background. But, nevertheless, they continue to be supportive of him.

**SPECIFIC CHARACTERISTICS OF OFFENSE**

Although the offense is serious, it began by the actions of a twenty-three-year-old with a background in waiting tables, nursing and no business experience. It was conducted in a wholly nonviolent manner and no threats, violence or coercion were utilized by the Defendant or any of those involved. The offense was purely financial and not directed towards individuals or vulnerable persons. Much of the actual money procured was used for expenses related to the business. This Defendant led a relatively modest lifestyle through the conspiracy and had very limited assets when the criminal investigation commenced.

There is a huge disparity between the intended loss of $15,126,493.91 and the actual loss of $6,799.581.52. Of the total amount billed throughout the conspiracy, this Defendant received approximately $2,002,090.76 which is reflected in his restitution order. As previously stated, a substantial portion of the funds were redirected back to the business. The use of intended loss for guideline calculations, rather than what this defendant received, disproportionally drives upward the guideline range. Because of this, the guidelines related to loss in U.S.S.G. §2B.1(b)(1)(G) and §2B1(b)(7) add significant increases to the "total offense level." This causes the guideline range to reach the statutory maximum and is "overstated" when considering the disparity of the intended and actual loss amounts.

Although not binding on this Court, the Third Circuit Court of Appeals in the matter of *United States v. Banks* 55 F. 4th 246,255 (3d Cir. 2022) recently contemplated the effects between intended loss and actual loss. Their ruling which was issued several months ago supported the use of actual loss as a method of calculating loss amount. The rational and comments in their decision,

if utilized by this Court, would dramatically reduce the offense level calculations as it pertains to this Defendant.

**RECIDIVISM**

Shane Camus would assert that he is an extremely low risk of recidivism. Prior to his involvement in this conspiracy, he was relatively law abiding and productive. During the last three years this investigation has been pending, he has been fully truthful and cooperative with law enforcement and severed all ties with those involved in prior fraudulent activities. He has sincere remorse and sleepless nights waiting for the conclusion. All of the facts outlined in this memorandum, the presentence report, and letters from those who know him provide a comfort level that this defendant will never be back.

§3553(a) would support that a "less severe sentence" would be sufficient to adequately punish and deter a first-time felon offender.

The Court can and should vary from the stated guideline range and impose a reasonable sentence consistent with §3553 (a) directives on deterrence and recidivism.

## CONCLUSION

For the reason stated herein, we are requesting this Honorable Court order a variance downward pursuant to the sentencing criteria in 18 U.S.C. §3553(a) and sentence the Defendant to a term significantly below the guideline range.

I HEREBY CERTIFY that I have filed this Sentencing Memorandum and Request for Alternative Sentence Pursuant to 18 U.S.C. Section 3553(a), with the Clerk of the United States District Court using CM/ECF, on this 23rd day of February 2024.

Respectfully submitted,

**LAW OFFICES OF MICHAEL J. ENTIN, P.A.**
Attorney for Defendant- Shane Paul Camus
101 N.E. Third Avenue, Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 745-4900
Florida Bar No. 270261
Email: mjentin@aol.com
Legalassisant2michaeljentin@gmail.com

***/ s/ Michael J. Entin***
MICHAEL J. ENTIN, ESQ.